The relief described hereinbelow is SO ORDERED.

Signed February 01, 2008.



_____
ROBERT D. BERGER
United States Bankruptcy Judge

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

IN RE:

ROBERT ANTHONY MIDDENDORF and                     Case No. 05-21748
MICHELLE ANN MIDDENDORF,                             Chapter 7
        Debtors.

**MEMORANDUM OPINION AND ORDER**
**DENYING TRUSTEE'S MOTION TO COMPROMISE**
**WITH INTERNAL REVENUE SERVICE**

The Chapter 7 Trustee Christopher J. Redmond (the "Trustee") filed a Notice of Intended Compromise and Request for Order Approving Stipulation and Agreement by and between the Trustee and the Internal Revenue Service.[1] The Debtors objected. The IRS has since deposited $22,250.00 in Debtors' counsel's trust account pending determination of the parties' rights to the funds.[2] The Trustee alleges the money was a preferential transfer. The Trustee offers the

---

[1] Doc. No. 16.
[2] Doc. No. 20.

08.01.31 Middendorf IRS Settle Order.wpd

intended compromise in lieu of filing a preference action against the IRS.. The Court, having reviewed the relevant pleadings and having considered counsel's argument, hereby declares the parties' rights and interest in the funds and orders the funds be distributed as set forth below.

**Findings of Fact**

The parties stipulate to the facts.[3] Debtors filed for Chapter 7 relief on April 19, 2005. Christopher J. Redmond was appointed the Chapter 7 Trustee. Between March 11 and March 21, 2005, Debtors liquidated approximately $112,000.00 in stocks, resulting in capital gains of $69,765.00. On March 21, 2005, Debtors had $97,627.74 in their bank account. Between March 21 and the petition date, Debtors made multiple payments from their bank account which resulted in an account balance of $130.15 on the petition date. Eight days prior to filing for bankruptcy, Debtors paid the IRS $22,250.00 as an estimated pre-payment for 2005 federal taxes on the capital gains realized by the stock sales. In April 2006, Debtors filed a joint 2005 tax return.[4] Debtors' total 2005 federal income tax liability was $8,533.00. Debtors' total wage withholding for federal taxes was $7,223.00 for the 2005 tax year. With the wage withholding and pre-payment, Debtors were entitled to a $20,940.00 refund.

On March 6, 2006, the Trustee demanded the IRS turn over the entire $22,250.00 tax pre-payment as a preferential transfer avoidable by the Trustee even though turning over the entire payment would create a $1,310.00 tax debt. The Trustee and IRS subsequently entered into a Stipulation and Agreement in which the IRS agreed to turn over the pre-payment if Debtors agreed or the Court ordered the turnover. Debtors objected to turnover, claiming (1) the pre-

---

[3] Doc. No. 22.
[4] Robert Middendorf filed the return as a surviving spouse. Michelle Middendorf passed away in early 2006.

08.01.31 Middendorf IRS Settle Order.wpd

payment was neither a preferential nor fraudulent transfer; (2) turnover of the entire pre-payment would result in Debtors incurring a tax liability they would not otherwise incur; and (3) Debtors are entitled to their *pro rata* share of the refund.

**Analysis**

This contested matter is a core proceeding over which the Court has jurisdiction.[5]

**I.     Standing**

The Trustee argues Debtors lack standing to challenge the proposed settlement with the IRS because the Estate will not produce a surplus. However, a portion of the refund is attributable to post-petition wage withholding. Any tax overpayment derived from Debtors' post-petition earnings is Debtors' property, not property of the Estate.[6] Further, the IRS is not defending the $1,310.00 tax liability which will result if the IRS turns over the entire pre-payment. Accordingly, Debtors have a pecuniary interest in this matter, are persons aggrieved by Tenth Circuit standards, and have standing to object to the Trustee's proposed settlement.[7]

**II.    Settlement Approval**

**Standard in Approving Settlements**

Whether to approve a proposed settlement is a matter within the Court's discretion.[8] In determining whether a settlement is fair and equitable and in the best interest of the estate, the Court considers (1) the probable success of the litigation on the merits; (2) any potential

---

[5] 28 U.S.C. §§ 157 and 1334.
[6] *In re Christie*, 233 B.R. 110, 112-13 (B.A.P. 10th Cir. 1999); *In re Donnell*, 357 B.R. 386, 399 (Bankr. W.D. Tex. 2006).
[7] *In re Petroleum Production Mgmt., Inc.*, 282 B.R. 9, 14 (B.A.P. 10th Cir. 2002); *see also In re RFE Industries, Inc.*, 283 F.3d 159, 164 (3rd Cir. 2002) (implicit in Rule 9019(a)'s requirement that debtor receive notice of any settlement is that the debtor may object if he is adversely affected by the proposed settlement).
[8] *Reiss v. Hagmann,* 881 F.2d 890, 891-92 (10th Cir. 1989).

- 3 -

difficulty in collection of a judgment; (3) the complexity and expense of the litigation; and (4) the interest of creditors in deference to their reasonable views.[9] The burden of persuasion rests with the party proposing the settlement.[10]

In this case, the IRS is not defending against the Trustee's claims. The Court need not rubber-stamp a proposed settlement just because the potential defendant is not asserting its case.[11] The Debtors have properly raised issue with whether the Trustee has preferential or fraudulent transfer avoidance claims against the IRS regarding the tax pre-payment. The real issue in this case is not whether the settlement is fair and equitable. The real issue concerns how to allocate the tax refund between the Estate and the Debtors.

### A. Preferential Transfer

The estimated tax pre-payment is not a preferential transfer. To prevail on a §547 claim, the Trustee must prove the transfer was (1) for the benefit of the creditor; (2) for an antecedent debt owed before the date of the transfer; (3) made while the debtor was insolvent; (4) made within 90 days of the bankruptcy filing; and (5) enabled the creditor to receive more than it would have received under a Chapter 7 if the transfer had not been made. All these requirements must be met, and the Trustee cannot prove the second element. The Debtors did not elect to split their tax year pursuant to 26 U.S.C. § 1398(d)(2); thus, their federal tax obligation did not arise until the end of the taxable year.[12] The Debtors' 2005 tax obligation did not arise until December 31, 2005. Debtors paid the estimated tax pre-payment on April 11, 2005. The

---

[9] *In re Western Pacific Airlines, Inc.,* 219 B.R. 575, 579 (D. Colo. 1998).
[10] *In re The Hermitage Inn, Inc.,* 66 B.R. 71, 72 (Bankr. D. Colo. 1986).
[11] *Western Pacific Airlines,* 219 B.R. at 580.
[12] 26 U.S.C. §1398(d)(1); *In re Franklin Savings Corp.,* 177 B.R. 356, 358 (Bankr. D. Kan. 1995).

Debtors did not have any pre-petition tax debt. Thus, the pre-payment was not a transfer on account of an antecedent debt. The Trustee has no claim under §547 to settle with the IRS.[13]

        **B.      Fraudulent Transfer**

The estimated tax pre-payment is not a fraudulent transfer. The Trustee offers no facts or arguments to support any element of a §548 claim. The Trustee's demand on the IRS and the proposed settlement are solely based on a preference claim. Nonetheless, at some point, the Trustee and Debtors began arguing whether the pre-payment could constitute a fraudulent transfer. To sustain a §548 claim, the Trustee would have to prove either (1) the transfer was made with the actual intent to hinder, delay, or defraud existing or future creditors; (2) the transfer was made for less than reasonably equivalent value while the debtor was insolvent; or (3) the transfer was made to an insider. The Trustee does not make a case on a single element. Neither party raises an issue with the Debtors' intent or whether the transfer was made to an insider. Only §548(a)(1)(B)'s reasonably equivalent value test is briefed. Debtors rightly rely on *In re Weir* to dispose of this claim. As in this case, the *Weir* trustee sought to avoid an estimated $27,000 tax pre-payment made by a debtor shortly after realizing a profit from a stock sale.[14] *Weir* rejects the fraudulent transfer claim because debtors receive reasonably equivalent value for tax pre-payments where they face significant tax liability and obtain a dollar for dollar credit against that potential liability and the right to a refund if the tax debt is ultimately less. The Trustee may no more recover the tax pre-payment as a fraudulent transfer than he could recover pre-petition wage withholdings under the same theory. There is nothing nefarious about

---

[13] *Wittman v. Weir (In re Weir),* 1990 WL 63072, at *3 (Bankr. D. Kan. 1990); *Traina v. Orrill (Matter of Orrill)*, 226 B.R. 563, 565 (Bankr. E.D. La. 1997).
[14] *Weir,* 1990 WL 63072, at *3-4.

- 5 -

paying estimated tax liability out of the very income to be taxed. In this case, the $22,500.00 estimated tax pre-payment was a reasonable deposit based on the 2005 tax rate for capital gains. Debtors could not know at the time of the pre-payment their deductions would be such as to significantly reduce their actual tax liability a year later. Further, when the tax liability was determined to be less than the pre-payment, the excess was returned as a tax refund, the pre-petition portion of which becomes property of the Estate.[15] The Trustee could not have recovered the tax pre-payment before the final tax liability was assessed.[16] Accordingly, the Estate has not been deprived its portion of the refund.[17] The Trustee has no claim under §548 to settle with the IRS.

### III. Tax Refund Allocation

The portion of Debtors' tax refund attributable to pre-petition withholdings and payments is Estate property.[18] Under the usual wage-withholding circumstance, the tax refund is allocated proportionately between pre- and post-petition based on the number of calendar days before and after the petition. For example, if the debtor files in the middle of the year, the estate receives 50 percent of the refund and the debtor receives 50 percent of the refund. This distribution presumes the debtor's wages have been withheld evenly throughout the tax year. However, in some cases, the calendar day proration does not work and the presumption may be rebutted by the facts. For example, where self-employed debtors made no pre-petition tax payments but made one large post-petition estimated tax payment which resulted in a refund for the tax year,

---

[15] The tax overpayment itself is not property of the estate. *Grant v. U.S. (In re Simmons)*, 124 B.R. 606, 608 (Bankr. M.D. Fla. 1991); *In re Weir,* 1990 WL 63072 (Bankr. D. Kan. 1990).
[16] *Kuntz v. United States (In re Halle),* 132 B.R. 186, 190 (Bankr. D. Colo. 1991).
[17] *Id.*
[18] *In re Barowsky,* 946 F.2d 1516, 1517 (10th Cir. 1991); *In re Rash*, 22 B.R. 323, 325 (Bankr. D. Kan. 1982).

08.01.31 Middendorf IRS Settle Order.wpd

the entire refund was awarded to the debtor.[19]  *Christie* found that  because the source of the estimated tax payment was from post-petition earnings, the refund belonged to the debtor.  No portion of the tax refund came from any payments or withholdings pre-petition, so no part of the tax refund could have represented "excessive tax withholding which would have been other assets of the bankruptcy estate if the excessive withholdings had not been made."[20]  Even though the *Christie* bankruptcy filing occurred during the tax year, the court was able to trace the source of the tax refund solely to post-petition wages and loans.  Thus, *Christie* allocated the refund based on the source of the tax refund and not based on the calendar day of the petition date.

This case is the converse of *Christie.*  In this case, the Debtors made a large estimated tax payment pre-petition.  The Estate is entitled to the portion of the tax refund attributable to the overpayment made pre-petition.  The petition date is the starting point to calculate the Estate's portion of the tax refund.  Section 541 states the bankruptcy estate is established at the commencement of the case.  Pre-petition wage withholdings and direct payments represent funds which would have been other assets of the bankruptcy estate had they not been withheld or paid.  By contrast, wage withholding or direct payments made to the IRS post-petition cannot become property of the estate because the post-petition earnings themselves would not be property of the estate in a chapter 7.  Post-petition tax withholdings cannot retroactively create estate property.  The trustee is only entitled to that portion of the refund in which the debtors had a legal or equitable interest as of the petition date.  The debtors' interest in a pre-petition tax overpayment

---

[19]  *In re Christie,* 233 B.R. 110 (B.A.P. 10th Cir. 1999).
[20]  *Id.* at 113 (quoting *Barowsky*, 946 F.2d at 1518).

- 7 -

08.01.31 Middendorf IRS Settle Order.wpd

is a contingent reversionary interest pending the final determination of the debtors' tax liability. Once the ultimate tax liability is assessed and satisfied, the debtors' interest vests in the resulting refund attributable to pre-petition funds.[21] Most of the tax refund in this case is attributable to pre-petition assets. However, Debtors continued to have taxes on their wages withheld post-petition. Some portion of the refund comes from post-petition withholdings. The Debtors and therefore the Estate had a legal or equitable interest in the tax overpayment as of the petition date; however, the Estate has no interest in the portion of the refund generated from the post-petition wage withholdings.

      The calendar day method will help determine the amount paid toward taxes pre-petition. Debtors' income taxes on wages were withheld throughout the year in the total amount of $7,223. Debtors filed for bankruptcy on the 110th day of the year or 30 percent into the tax year. Thirty percent of the total wage withholding was approximately $2,167, and post-petition wage withholding was approximately $5,056. Thus, pre-petition, Debtors paid $2,167 in wage withholding plus $22,250 in the direct payment toward 2005 taxes. On the petition date, Debtors held a contingent reversionary interest in any resulting overpayment from these funds. Debtors did not need to make any further tax payments post-petition because, albeit unbeknownst to them, they had entirely satisfied what would become their 2005 tax liability with the pre-petition wage withholdings and the large pre-payment. Debtors' 2005 tax liability was $8,533. Pre-petition wage withholdings of $2,167 plus the $22,250 pre-payment equals $24,417 less the $8,533 tax liability assessed, means Debtors, on the petition date, held a contingent reversionary interest in $15,884. This is the Estate's property.

---

[21] *Halle,* 132 B.R. at 189-90.

- 8 -

08.01.31 Middendorf IRS Settle Order.wpd

In this particular situation, the entire tax liability falls upon the Estate's portion of the refund because the Trustee is not entitled to any part of the post-petition income tax wage withholding because that money cannot retroactively become Estate property. The recent *Donnell* case thoroughly analyzes this result, and its reasoning is persuasive and worth quoting at length here:

> In this case, the entire burden of paying Mr. Donnell's 2005 income taxes falls upon the withholding made pre-petition. This outcome seems to favor the debtor over the estate, so it is reasonable to ask "Why?" The simple answer is that post-petition, the debtor has no duty to the bankruptcy estate to make any tax withholdings at all. To the extent that a debtor makes such post-petition withholdings, they should naturally accrue to the benefit of the debtor, because despite this Chapter 7 discharge, the debtor remains responsible for his tax liability for the entire tax year, *including* the pre-petition portion. *See* 11 U.S.C. §523(a); 26 U.S.C. §1398. It would make little sense, and would contradict *Burgess*,[22] to punish the prudent debtor, who makes sufficient post-petition tax withholding to generate a refund, by then awarding some of those post-petition earnings back to the bankruptcy estate. Had Mr. Donnell, post-petition, earned the same amount, but withheld nothing for federal income taxes, the estate would receive precisely the same amount as it does here. This is entirely fair.
>
> The Court's solution is also better than the two alternatives: (1) attempting to weigh the year's total withholdings based upon the debtor's tax liabilities for the pre- and post-petition periods, or (2) giving the estate the first cut of the refund. A weighing approach based upon an estimation of the debtor's tax liability on the petition date - measured by the difference between any tax liability accrued and withholding and estimated payments made in the pre-petition period - is a tempting option, because it seems sensible that pre-petition withholding should apply only to pre-petition tax liabilities. However, a calculation such as this, requiring an allocation of tax liability to the pre- and post-petition periods, is perilously close to a court-created short year election. The short year election in 26 U.S.C. §1398(d)(2) is *optional,* and this Court should not adopt a rule that has the effect of imposing such an election where the debtor did not make one. *See* 26 U.S.C. §1398(d)(1) (expressly stating that, unless a short year election is made, bankruptcy has no effect upon the taxable year of the debtor). Further, the premise that pre-petition withholding should apply only to pre-petition tax liabilities is contradicted by both the Bankruptcy Code and the Internal Revenue Code. *See* 11 U.S.C. §523(a) (bankruptcy does not discharge income tax debt); 26 U.S.C. §1398 (bankruptcy has no effect upon the tax year without the debtor's making the short year election).

---

[22] *Matter of Burgess,* 438 F.3d 493, 498 (5th Cir. 2006)(*en banc*).

> Giving the estate the first priority to the refund is also unsatisfactory. Such a rule would work by giving the estate claim to the entire refund up to the total amount of prepetition withholding. Such a rule cannot work because, contrary to *Burgess*, it would allow for the post-petition creation of estate property. *See Burgess,* 438 F.3d at 503. For example, a debtor with a $20,000 total tax liability for the year may withhold $10,000 pre-petition and $10,000 post-petition, resulting in no refund. However, if the same debtor withholds $15,000 post-petition, the entire $5,000 refund, by this rule, would be estate property, even though the interest of the debtor in a refund on the petition date is identical in both scenarios. This cannot be right.[23]

This result is also in accord with *Christie,* which finds post-petition payments may not retroactively become estate property when the money is returned to the debtor as a tax refund. Accordingly, from the $20,940.00 refund, $5,056.00 representing the post-petition wage withholding shall be deducted and returned the Debtors. The Trustee shall be paid $15,884.00. The $1,310.00 remaining in the Debtors' counsel's trust account shall be returned to the IRS in complete satisfaction of the Debtors' 2005 tax liability.

### Conclusion

IT IS HEREBY ORDERED that Debtors shall receive $5,056.00.

IT IS FURTHER ORDERED that the Estate shall receive $15,884.00.

IT IS FURTHER ORDERED that the IRS shall receive $1,310.00 in full satisfaction of Debtors' 2005 tax liability. Penalties and interest are hereby abated.

**IT IS SO ORDERED**.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

---

[23] *Donnell,* 357 B.R. at 399-400 (footnotes omitted).

- 10 -

08.01.31 Middendorf IRS Settle Order.wpd

Case 05-21748   Doc# 31   Filed 02/01/08   Page 10 of 10